UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00098-GNS-RSE

CAROL ROTH                                                                                                    PETITIONER

v.

ADAM P. ROGERS,
Director of Industry Operations,
Louisville Field Division,
Bureau of Alcohol, Tobacco, Firearms, and Explosives                              RESPONDENT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on competing Motions for Summary Judgment (DN 25, 26). The motions are ripe for adjudication.[1]

### I.      BACKGROUND

Martin Roth ("Martin") previously possessed a federal firearms license ("FFL") and operated a gun store, called Roth Arms, out of a home he owns jointly with his wife, Petitioner Carol Roth ("Roth"). (*See* Resp't's Mot. Summ. J. Ex. 1 (PageID # 87-93), DN 25-1; Admin. Hr'g Tr. 19:16-22, 52:21-24, 66:18-25, DN 26-2). In 2021, Martin's FFL was revoked due to willful violations of the Gun Control Act. (Resp't's Mot. Summ. J. Ex. 1 (PageID # 91-93)).

---

[1] Roth's response and motion contain requests for oral argument. (Pet'r's Resp. Resp't's Mot. Summ. J. 1, 20, DN 33; Pet'r's Mot. Summ. J. 1, 14, DN 26). "[D]istrict court[s] may decide to forego oral argument on motions for any number of sound judicial reasons." *Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs, Inc.*, 975 F.2d 300, 301 n.1 (6th Cir. 1992). "Many times the legal issues are abundantly clear and so firmly settled so as to make oral argument completely unnecessary." *Id.* The issues raised in this case have been adequately briefed by the parties such that this case does not present a need for oral argument. Accordingly, Roth's request for oral argument is denied.

1

In 2022, Roth submitted an application for an FFL as sole proprietor of Roth Arms. (*See* Resp't's Mot. Summ. J. Ex. 7, DN 25-7 [hereinafter Roth Appl.]). On her application, Roth was required to identify anyone who would serve as a "responsible person" for the business, and she listed only herself. (Roth Appl. 3). After the application was submitted, an investigator from the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") conducted a background interview with Roth. (Admin. Hr'g Tr. 9:5-7). Martin was present during the interview and offered answers to questions asked of Roth until he was asked to leave by Roth's attorney. (Admin. Hr'g Tr. 12:1-7, 13:12-14:11). Roth revealed that she did not know any firearms distributors and that she would get the initial inventory for Roth Arms as a gift from Martin. (Admin. Hr'g Tr. 46:11-15, 59:19-60:13). She also explained that Martin would be an employee at Roth Arms. (*See* Admin. Hr'g Tr. 28:20-24).

The ATF later issued a notice of its intent to deny Roth's application on the grounds that Roth failed to disclose Martin, who is ineligible to receive an FFL due to the revocation of his prior FFL, as an additional owner and responsible person on the application. (*See* Resp't's Mot. Summ. J. Ex. 1 (PageID # 81-82)). An administrative hearing was held in front of Respondent Adam Rogers ("Rogers"), director of industry operations for the Louisville field division of the ATF. (Admin. Hr'g Tr. 4:7-12). Following the hearing, Rogers issued a final denial of Roth's application, finding that Roth willfully concealed Martin's true role in the business as a responsible person. (Resp't's Mot. Summ. J. Ex. 10, at 5-7, DN 25-10).

Roth sought *de novo* judicial review of the denial under 18 U.S.C. § 923(f)(3). (Pet'r's Pet. Jud. Rev. 1-2, DN 1).

## II. STANDARD OF REVIEW

### A. The Meaning of *De Novo* Review Under Section 923

The parties agree that a district court reviews the denial of an FFL application *de novo* but disagree exactly on what this means. Rogers argues that in this context, *de novo* review has been interpreted "narrowly." (Resp't's Mot. Summ. J. 9-10, DN 25 (quoting *Fulkerson v. Lynch*, 261 F. Supp. 3d 779, 783 (W.D. Ky. 2017), *aff'd sub nom. Fulkerson v. Sessions*, 17-5874, 2018 WL 3726278 (6th Cir. Mar. 23, 2018))). Rogers asserts that the relevant question is "whether all of the evidence presented is sufficient to justify [the] denial of the license." (Resp't's Mot. Summ. J. 9-10 (quoting *Lynch*, 261 F. Supp. 3d at 783)). On the other hand, Roth argues that the Court must "apply the law and the facts independently of ATF's determination and make a determination whether Petitioner's FFL application should rightly have been denied." (Pet'r's Mot. Summ. J. 9, DN 26).

In relevant part, 18 U.S.C. § 923 provides:

> If . . . the Attorney General decides not to reverse his decision to deny an application or revoke a license, the Attorney General shall give notice of his decision to the aggrieved party. The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing held under paragraph (2). If the court decides that the Attorney General was not authorized to deny the application or to revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court.

18 U.S.C. § 923(f)(3). The Sixth Circuit acknowledged the uncertainty echoed by the parties about the scope of judicial review required by Section 923(f)(3) in *Procaccio v. Lambert*, 233 F. App'x 554 (6th Cir. 2007), but declined to provide any guidance. *Id.* at 556-57 ("We therefore leave for a later date any examination of the subtleties presented by § 923(f)(3)'s standard of review.").

3

Later, this Court considered the question and concluded that the statute "does not call upon this Court to decide whether it would [deny the license in its] own judgment, but whether all of the evidence presented is sufficient to justify the . . . [denial] of the license.'" *Lynch*, 261 F. Supp. 3d at 783 (alterations in original) (quoting *Dick's Sporting Goods, Inc. v. Boydston*, 143 F. Supp. 3d 732, 740 (W.D. Tenn. 2015)). The Sixth Circuit affirmed, stating this *de novo* review "is limited to the question of whether the Attorney General was 'authorized to deny the application.'" *Sessions*, 2018 WL 3726278, at *2. In other words, a court considers "whether sufficient evidence existed to support the . . . licensing decision." *Id.* (citing *Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 465-66 (6th Cir. 2004)).

B. **<u>Summary Judgment Under Section 923</u>**

As a sister court has explained,

> [S]ummary judgment may be appropriate upon *de novo* review on the basis of the administrative record when no substantial reason to receive additional evidence is present and when material facts developed at the administrative hearing, which the court also concludes justify non-renewal, are not substantially drawn into question by the party petitioning for review.

*Kuss v. U.S., Bureau of Alcohol, Tobacco, & Firearms*, 440 F. Supp. 2d 645, 649 (E.D. Ky. 2005) (quoting *3 Bridges, Inc. v. United States*, 216 F. Supp. 2d 655, 657 (E.D. Ky. 2002)); *see also Pinion Enters., Inc. v. Ashcroft*, 371 F. Supp. 2d 1311, 1314 n.6 (N.D. Ala. 2005) (citing *Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 468 n.7 (7th Cir. 1980)) (noting the distinction between motions for "summary judgment" under Section 923 and traditional motions for summary judgment under the federal rules). Here, because the parties largely agree on the material facts, no evidentiary hearing is necessary, and the review may be resolved on summary judgment.

## III.  DISCUSSION

Rogers denied Roth's FFL application based on the conclusion that she willfully failed to disclose that Martin would serve as a "responsible person" at Roth Arms. (Resp't's Mot. Summ. J. Ex. 10, at 5-7).  Roth's position is that Martin could not have been considered a responsible person because she was applying as a sole proprietor and the plain language of the statute only anticipates the possibility of a responsible person when the applicant is a corporation, partnership, or association.  (Pet'r's Resp. Resp't's Mot. Summ. J. 12-14).

 Rogers argues that Martin should be considered a responsible person because he would "control the 'management, policies, and practices' of the firearms portion of a gun business.'" (Resp't's Reply Mot. Summ. J. 3, DN 35 (quoting Resp't's Mot. Summ. J. Ex. 8, at 6, DN 25-8)). Rogers further argues that the ATF was not required to take Roth's purported business association at face value and that in reality Martin is either the true sole proprietor, or at the very least a business partner.  (Resp't's Reply Mot. Summ. J. 4-5).  Based on the briefing in both parties' motions, there are three issues which must be addressed:  (1) whether, despite the language of Section 923(d)(1)(B), a sole proprietorship can include a "responsible person" other than the applicant; (2) whether Roth was really applying as a sole proprietor; and (3) whether, assuming that Martin was a responsible person, Roth willfully omitted him from her application.

### A.     Sole Proprietorships and Responsible Persons

The instructions attached to the FFL application that Roth filled out defined the term "responsible person" as follows:

> In addition to a Sole Proprietor, a Responsible Person is, in the case of a Corporation, Partnership, or Association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of the Corporation, Partnership, or Association, insofar as they pertain to firearms.

(Resp't's Mot. Summ. J. Ex. 8, at 6). This definition tracks the language of Section 923(d)(1)(B), which extends the definition of "applicant" to include, "in the case of a corporation, partnership, or association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation, partnership, or association . . . ." 18 U.S.C. § 923(d)(1)(B).

As Roth points out in her response, many of the cases Rogers relies on involve an applicant's failure to disclose an ineligible responsible person on an FFL application for a corporation. Rogers cites heavily to *Gossard v. Fronczak*, 206 F. Supp. 3d 1053 (D. Md. 2016), which contains several statements of law that ostensibly support Rogers' position. First, the court offered the following four-part definition of "responsible person":

> First, because it includes any individual "possessing" the power to direct an applicant's business, an individual qualifies as a responsible person even if she does not intend to act on that power. The capacity for intervention is enough. Second, the person's control can be direct or indirect. Third, that direction must extend to the "management, policies, and practices" of the applicant's business. Fourth, the management, policies, and practices subject to direction must pertain to firearms, as opposed to other parts of the business unrelated to guns.

*Id.* at 1061-62 (internal citation omitted) (citation omitted). The court also explained:

> In the case of a denial of an initial license application, if an applicant obtains an FFL business from an individual whose GCA violations disqualify him from continuing to operate it, the fact that the transfer occurred shortly after the disqualification and was not an arms-length transaction can indicate that the applicant's business will not operate independently of the former owner.

*Id.* at 1062 (citation omitted).

An important distinction between *Gossard* and the instant case, however, is that *Gossard* was reviewing an FFL application on behalf of a limited liability company, an unincorporated association. *See id.* at 1063. Therefore, it is the sort of business organization that can have a "responsible person" as contemplated by Section 923(d)(1)(B).

The parties have not directed the court to a case where a court has found a responsible person in the context of a sole proprietor's FFL application, other than the sole proprietors themselves. Indeed, at least one court has found otherwise. *See Townson v. Garland*, No. 1:22-00251-KD-N, 2024 1298070, at *7 (S.D. Ala. Mar. 26, 2024) ("A plain reading of this definition of 'responsible person' would lead a reader to believe that in a sole proprietorship, *only* the sole proprietor is the responsible party." (emphasis added)); *see also Harris News Agency, Inc. v. Bowers*, No. 7:13CV5012, 2016 WL 3920163, at *1 n.7 (D. Neb. July 15, 2016) ("A 'responsible person' for a license is 'a sole proprietor' or '[i]n the case of a corporation, partnership, or association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of the corporation, partnership, or association, insofar as they pertain to firearms.'" (alteration in original) (citation omitted)).

Accordingly, the Court can find no authority supporting the proposition that, under Section 923(d)(1)(B), a sole proprietorship can have a "responsible person," other than the named sole proprietor . Nonetheless, as Rogers points out, "[c]ourts . . . permit ATF to look past the formal business structure of an applicant in determining alleged violations." (Resp't's Reply Mot. Summ. J. 3 (quoting *XVP Sports, LLC v. Bangs*, No. 2:11CV379, 2012 WL 4329263, at *5 (E.D. Va. Mar. 21, 2012), *report and recommendation adopted*, No. 2:11CV379, 2012 WL 4329258 (E.D. Va. Sept. 17, 2012)); *cf. Casanova Guns, Inc. v. Connally*, 454 F.2d 1320, 1322 (7th Cir. 1972) ("[I]t is well settled that the fiction of a corporate entity must be disregarded whenever it has been adopted or used to circumvent the provisions of a statute."). Accordingly, the Court must examine whether Roth was actually applying as a sole proprietor.

B. **Business Organization**

Rogers argues that despite Roth applying as a sole proprietor, she and Martin were at the very least business partners, or Martin himself was the true sole proprietor. (Resp't's Reply Mot. Summ. J. 4). Kentucky law defines a partnership as "an association of two (2) or more persons to carry on as co-owners a business for profit."[2] KRS 362.175(1). "[A]n express agreement is not necessarily required, and a partnership can be implied based on the parties' words and actions." *Haymaker Dev. Co. v. Gatton*, No. 5:20-478-DCR, 2022 WL 391305, at *4 (E.D. Ky. Feb. 8, 2022) (citing *Comm'r v. Olds*, 60 F.2d 252, 254 (6th Cir. 1932)).

The Court finds persuasive a recent opinion from a sister court in *Townson v. Garland* that considered a similar appeal where the ATF denied the applicant's FFL application due to its belief that the applicant's father, who was prohibited from having an FFL, was a responsible party, if not the true applicant. *See Townson*, 2024 WL 1298070, at *3. The court ruled in favor of the applicant, agreeing that the applicant intended to take over his father's business, but finding sufficient evidence that his father truly intended to "turn the business over to [the applicant] and 'step out of the business.'" *Id.* at *8 (citation omitted). While *Townson* did not address whether the applicant and his father were business partners, the court's handling of the broader question of whether the son was simply a "straw applicant" for his father is instructive. *See id.* at *7. Several facts supported the court's decision. While the court acknowledged that the applicant intended to rely on his father to finance the business and that the father was on the business operating bank account, the applicant submitted a compliance plan to the ATF detailing how the business would be run with no control or management by the applicant's father. *Id.* at *8. This plan included

---

[2] "[F]ederal courts may look to state law for guidance in defining terms, formulating concepts, or delineating policies." *Combs v. T.J. Samson Cmty. Hosp.*, No. 1:05CV-190-M, 2006 WL 120235, at *2 (W.D. Ky. Jan. 12, 2006) (quoting *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973)).

safeguards to ensure the applicant's father would not be a part of the business, that the applicant would lease the building for the business from his father, and that the applicant would enter a purchasing agreement for the initial inventory with his father. *Id.* at *3. Finally, there was evidence that the applicant's father intended to "step out of the business." *Id.* at *8 (citation omitted). Ultimately, the Court was persuaded that the ATF's decision was based on "[s]peculation and assumption" and that "[t]he evidence credibly established that [the applicant] was attempting to take over his father's business." *Id.*

Here, like in *Townson*, Martin was the prior owner of Roth Arms until his FFL was revoked. (*See* Admin. Hr'g Tr. 19:10-22; Resp't's Mot. Summ. J. Ex. 1 (PageID # 87-93)). Martin and Roth jointly owned the home out of which the business would be run. (*See* Admin. Hr'g Tr. 52:21-24, 66:18-25). Roth admitted that she did not know any firearms distributors. (Admin. Hr'g Tr. 46:11-15). Roth explained that she would be getting her initial inventory as a gift from Martin as opposed to purchasing it like in *Townson*. (Admin. Hr'g Tr. 59:19-60:13). Unlike in *Townson* where the applicant's father was stepping out of the business, Martin would actually serve in several roles at Roth Arms. (Admin. Hr'g Tr. 28:20-24). During the ATF's interview with Roth, Martin spoke over Roth at least twice until Roth's attorney asked him to leave the room. (Admin. Hr'g Tr. 17:9-18:1, *see also* Admin. Hr'g Tr. 62:13-63:1). Finally, Roth's application fee was paid from a joint bank account that was associated with Martin's prior FFL that Roth admitted she intended to use for her business, showing an intent to share profits. (*See* Admin. Hr'g Tr. 34:12-25, 35:22-36:21).

In *Townson*, there was strong evidence that the applicant was actually taking over his father's business. *See Townson*, 2024 WL 1298070, at *8. The instant case lacks such indicia of independence and instead provides strong indications that Martin would have the capacity to make

managerial decisions for the business. *Cf. Gossard*, 206 F. Supp. 3d at 1061-62 (finding a former owner to be a responsible person of a corporation where the applicant obtained the business and inventory shortly after the former owner's FFL was revoked). Roth argues that none of the facts Rogers relied on in denying her application, taken alone, put her in violation of Section 923's licensing scheme. (*See* Pet'r's Resp. Resp't's Mot. Summ. J. 3-7, 15-18). This is perhaps true, but if the ATF were not allowed to scrutinize the circumstances surrounding an application, it would be powerless to stop individuals with revoked licenses from seeking to circumvent Section 923. *Cf. Crusader Gun Grp., LLC v. James*, No. 4:22-CV-00906, 2023 WL 6194039, at *4 (S.D. Tex. Aug. 17, 2023) ("Crusader's view would gut the entire federal firearm licensing scheme. Corporate officers whose businesses were denied FFLS due to serious violations could simply create new business entities with clean slates and no prior violations. The statute would be powerless to stop them, leaving ATF to play whack-a-mole with violators of the GCA. Congress cannot have intended this result.").

In this instance, Martin had the inventory and the knowledge of the business, and Roth had the capacity to receive an FFL; the two shared the bank account used for the business and intended to run the business out of their jointly owned home. Aside from Roth's assurances that she would not let Martin serve as a responsible person and that she would acquire a separate bank account, there was no evidence that Roth had any plan or the experience to run the business independently of Martin's control if the ATF approved her application for an FFL. (*See* Roth Aff. ¶¶ 7-11, DN 33-1). The circumstances and evidence here support Rogers' conclusion that Roth and Martin were partners and that Martin would have the capacity to "direct [Roth Arm]'s operations pertaining to firearms." *Gossard*, 206 F. Supp. 3d at 1063.

### C. Roth's Willfulness

"A violation is willful if the dealer 'intentionally, knowingly, or recklessly violates known legal requirements' of the Gun Control Act." *Boydston*, 143 F. Supp. 3d at 741 (quoting *Armalite, Inc. v. Lambert*, 544 F.3d 644, 648 (6th Cir. 2008)). Rogers argues that Roth's failure to disclose Martin as an ostensible partner was willful. (Resp't's Mot. Summ. J. 14).

Having found that there was sufficient evidence for Rogers to conclude that Martin would necessarily play an active role in this business, there was also sufficient evidence to conclude that Roth's failure to disclose this information was willful. The application defined "responsible person." (Resp't's Mot. Summ. J. Ex. 8, at 6). Roth specifically denied that Martin would possess, "directly or indirectly, the power to direct or cause the direction of the management, policies, practices of" Roth Arms. (Admin. Hr'g Tr. 26:4-27:1; Resp't's Mot. Summ. J. Ex. 8, at 6). Because Roth was aware of the facts that rendered Martin her business partner and aware of her legal obligation to disclose him as someone with the capacity to direct the management, policies, and practices of Roth Arms, Rogers was authorized to conclude that Roth willfully omitted Martin from her application. *See Gossard*, 206 F. Supp. 3d at 1064-65.

### D. Conclusion

"[S]ufficient evidence existed to support [Roger]'s licensing decision" that Roth willfully failed to include Martin as an active business participant on her FFL application. *Sessions*, 2018 WL 3726278, at *2 (citing *McCabe*, 387 F.3d at 465-66). This conclusion does not mean that any FFL application for Roth Arms must be denied simply because of Martin's revoked FFL. Such an application, however, may be required to present indicia that the applicant would truly be operating independently of Martin's influence. *See Gossard*, 206 F. Supp. 3d at 1065 ("The Court's determination that ATF was authorized to deny Gossard's application for the willful omission of

11

material information does not mean that ATF can necessarily deny any FFL application to sell firearms at the Range while Gilbert owns the property."). "The Court trusts that ATF will give full and fair consideration to any future FFL applications relating to this [business] that may be submitted by [Roth] or others." *Id.*

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Respondent's Motion for Summary Judgment (DN 25) is **GRANTED**, and the Petition for Judicial Review (DN 1) is **DISMISSED**.

2. Petitioner's Motion for Summary Judgment (DN 26) is **DENIED**.

3. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

May 3, 2024

cc: counsel of record